LULA CARLISLE V. THE STATE.

*No. 1226.   Decided February 3d, 1897.*

**1.   Confessions Made in Arrest to Officer.**

The fact, that defendant was in a perturbed and excited state of mind before being warned by the officer having her in arrest, would afford no ground for rejecting her confessions made to him after he had warned her.

**2.   Same—Confession to Party Not an Officer.**

Where it appeared that one Dr. S., who was not an officer, had endeavored to get defendant to confess, telling her, that it would be better for her to do so.   Held: This did not render inadmissible her. voluntary confessions to one C., on the next day; Dr. S. not being present and not having any authority over her.

**3.   Same—Harmless Error.**

On a trial of a mother for the murder of her child, evidence of her confession to one C., to the effect substantially, that she had killed the child by poisoning it, if inadmissible, was harmless error in view of the testimony of defendant herself in which she made the same statement in substance.

**4.   Same—Charge.**

Where the court instructed the jury in effect, that they would not · consider the statements or confessions of defendant unless they were voluntarily made, or if they were made by reason of a promise on the part of any one to protect her from punishment.   Held:   The charge was favorable to defendant, and she could not be heard to complain in that regard; and, if said instructions assume that the confessions were made it assumes a fact which was undisputed and uncontradicted, and was not a charge upon the weight of the testimony.

**5.   Same.**

A charge, which instructed the jury, in effect, that a request, demand or persuasion of her mother would constitute no excuse for poisoning her child, was correct.

APPEAL from the District Court. of Tarrant.   Tried below before Hon. W. D. HARRIS.

Appeal from a conviction for murder in the first degree; penalty, a life term of imprisonment in the penitentiary.

The facts of the case will be fully understood from the testimony of defendant, which is given in full, as follows, viz:

Lula Carlisle, defendant, testified: · "My name is . Lula Carlisle.   I am 16 years of age.   I was 16 years old September 1, 1896.   I know Jim Cotton and Martha Cotton.   They live at Azle, Texas.   I gave birth to a male child there on June 18, 1896.   The child has no name. This child lived until Tuesday, June 30,. 1896, when it died.   It died about 2 o'clock p.·m., of .that day.   It was a healthy child, but, at first, could not manage the nipple well. . My child was healthy and stout after its birth,· until Sunday·.evening, June 28,. 1896, when it was taken sick, and began to vomit.and run off at the bowels, and was sick and restless all that night.   On the next morning, Monday, June

29, 1896, I sent for Dr. Bob Smith, who lived near Jim Cotton's house, and he came over to see my baby. He left three powders with me, and told me to give the baby one powder every two hours. The doctor gave the baby a powder and a dose of paragoric before he left. The doctor came again that evening, but never gave any medicine this time. He said the baby was better. I gave the baby the medicine the doctor left for it. Dr. Smith came again to see my baby on Tuesday morning, June 30, 1896, and again left some powders for me to give the baby, and told me, if the baby got worse to send for him. The baby got worse, and I told Uncle Jim Cotton to go after the doctor, and he said that it was no use, that the baby was dying. I was very sick on this day. I was worried to death, and hardly knew what I was doing. Uncle Jim Cotton gave my baby a dose of medicine the day it died. This was after Dr. Smith had left. When I say that Uncle Jim Cotton gave my baby some medicine, the day it died, I mean that he poured some medicine out in the spoon that I was holding in my hand, and I put the medicine in the baby's mouth. I did not see any powder in the medicine. I asked Uncle Jim to pour me out some oil to give the baby. My mother wrote me a letter from Fort Worth, and sent me some white grayish powder in it. Uncle Jim Cotton brought me this letter and gave it to me in the presence of Martha Cotton. He told me, when he gave the letter to me, that it had money in it. Mother had tried to get me to kill my baby, and had sent me poison for that purpose, but I did not give it to the baby. She sent it in a letter. I burned the powder up in the stove, and I don't know what became of the letter. This powder came in a large bulky letter, that Uncle Jim Cotton brought and handed me, in the presence of Aunt Martha Cotton. I afterwards wrote my mother word, that I would not give the baby the medicine or kill it, but would give the baby away. I received an answer from my mother to this letter. I destroyed this letter. I do not know all the contents of this letter, but remember that she stated in it, that she saw that I had not given the baby the medicine as she told me, and that unless I got that baby out of the way, I need not expect any more help from her; that I could go my way and she would hers, and that I need not call her mother any more or come home again: and that I should not be with my sister any more; but, that if I did as she said, that I could then write her and she would come to me. My mother sent me some powders in this letter and said, it would make the baby nurse. I gave my baby one dose of this medicine in a spoon, and the balance of the medicine I burned up. This powder was a bluish, white powder. I received from my mother the letter, a single sheet here shown me by the County Attorney is a part of a letter my mother wrote me. The other letter here shown me by the County Attorney, I did not receive from my mother. I never saw it before. It is addressed to me and looks like my mother's handwriting. I received several letters from my mother while I was at Uncle Jim Cotton's house. Uncle Jim Cotton always brought me the letters from the postoffice. I kept all my letters that I

received from my mother in a little box under my bed.   Some time before I went to Azle, and while in Fort Worth, my mother advised me to destroy the child which was then in my womb, and which was the same child that afterwards died on June 30, 1896, at Azle.   My mother took me to a midwife, here in Fort Worth, named Mrs. Dumas, for the purpose of having her produce an abortion on me.   I took some cotton-root tea and other preparations, that Mrs. Dumas gave me, for the purpose of producing an abortion, but the medicine Mrs. Dumas gave me did not seem to have the desired effect.   My mother then became afraid that if I continued to take Mrs. Dumas' medicine it might cause me to lose my life, and advised me, on that account, to wait until my baby was born and then kill it.  I agreed to this arrangement and a short time thereafter went to Uncle Jim Cotton's at Azle, where I remained about two months, until my baby was born. My mother took me to Uncle Jim Cotton's house, and made arrangements with them to keep me there until I was confined.   My mother then returned to Fort Worth, and did not come to see me any more after that.   The letters she wrote me were written after this.   My mother was not present when my baby was born or any time afterwards.   I wrote her about the birth of the baby.   On the Monday after the death of my baby I told Aunt Martha Cotton that I had poisoned and killed my child, and that I had done so with the powders my mother had sent me in a letter.   I also told her in this conversation that I had lied to her and Dr. Bob Smith when I told them, the day before, that I had not killed my child.   I made this statement to and confession to Aunt Martha Cotton because she and Dr. Bob Smith had both assured me, the day before, that it would be better for me to tell the truth about it and confess that I had poisoned my baby.  Dr. Bob Smith had told me, the day before I made the statement, that if I would confess and tell the truth about it, that it would not go hard with me, and that I would be used as a witness against my mother.   When Dr. Smith made these statements to me, I denied having killed and poisoned my baby.   Dr. Smith was not present when I made the confession to Aunt Martha Cotton on the Monday after my child's death on Tuesday.   Aunt Martha Cotton did not make me any promises, or tell me it would be better for me to confess, when I confessed to her on this Monday.   I made this confession because Dr. Smith had told me, the day before, that it would be better to confess and tell the truth about it.  Mr. J. L. Davidson, the constable, brought me from Azle, to Fort Worth, under arrest.   I was very much excited at the time.   He assured me that he was my friend. I told Mr. Davidson on the way to Fort Worth, that my schoolmate had had a child and that now she was doing well, while I was on my way to the jail charged with the murder of my child, and it might be that I would go to the penitentiary for life.   My mother wrote me several letters while I was sick and sent me poison to kill my child, but I did not intend to kill it at the time I gave it the medicine.   I did not give it the amount she sent me.   She was importuning me, in every letter, to do

away with the child, and telling me, that I had lied to her about it, and that she would disown me—until I was troubled to death and did not know what I was doing. Mr. Davidson, the constable, never, at any time, warned me about any statement I might make to him. I was a witness at the inquest. I testified, at the inquest, that I had tried to kill my baby before it was born. I also testified at the inquest, that I had killed my baby and poisoned it with the powders my mother had sent me in a letter; and, that I knew the powders would poison and kill it, because my mother had told me so. I do not know why I destroyed some of the letters my mother sent me and saved others. I do not know why I destroyed the last letter mother wrote me, and which contained the powder which she said would make the baby nurse. I am a colored woman and unmarried. My child was a bastard."

[No briefs for appellant have come to the hands of the Reporter.]

*Mann Trice*, Assistant Attorney-General, for the State.—The several objections to the confessions of the accused may be disposed of together. As to the confession to Martha Cotton, there is a conflict between that witness and the accused as to whether or not it was influenced by the advice of the witness, Martha Cotton, and another witness, Dr. Smith, to the effect that it would inure to her benefit. Independent of the contested fact of the spontaneity of the confession, the rule is that to render a confession inadmissible, as being induced by a promise of some benefit, such promise must be positive, of such a character as would be likely to influence accused to speak untruthfully, and must be made or sanctioned by some one in authority. Rice v. State, 22 Tex. Crim. App., 654; Gentry v. State, 24 Tex. Crim. App., 80; Neeley v. State, 27 Tex. Crim. App., 324; Searcy v. State, 28 Tex. Crim. App,, 513; Jackson v. State, 29 Tex. Crim. App., 458, Cannada v. State, 29 Tex. Crim. App., 537. There was no positive promise of benefit in this instance, likely to induce an untruthful statement, and neither of the witnesses was a person in authority.

As to the confession to Constable Davidson, that officer testified positively to the essential predicate of warning. This predicate was denied by the accused, testifying on her own behalf, on this trial, in the course of which testimony she made substantially the same confession of facts and admitted that she had made the same confession to the witness, Martha Cotton, and to the justice of the peace on the inquest. In the first place, it is a question for the court and not the jury, whether or not the confession was voluntary (Carter v. State, 37 Texas, 362), and the judge, under the circumstances of this case, was justified in admitting the confession of Davidson as voluntary. In the next place, the confession was already legally before the court, and if there was error in this instance it did not injure the case of the accused. The same may be said of the remaining objections to the proof of confessions.

As to the objection to the charge of the court, urged in the sixth bill

of exceptions, it is to be said that it was error inuring to the benefit of the accused, and for that reason not subject to complaint.

The evidence would not authorize a charge on either circumstantial evidence or accomplice testimony.

The law makes murder by poison per se murder in the first degree. The means used itself is evidence of malice express. The lower degrees of homicide, under a murder by poison, cannot be made the subject of the charge—unless indeed the proof shows the administration under physical coercion, which is not in this case.

HURT, PRESIDING JUDGE.—Appellant was convicted of murder in the first degree, and her punishment assessed at a life term in the penitentiary, and she prosecutes this appeal. The indictment charges that she poisoned her infant child, some twelve days old. The evidence shows circumstantially, and also by her positive confession, that she caused the death of her child by administering poison to it. The body of the child was exhumed, and the contents of its stomach analyzed, and showed to contain four and one-half grains of antimony—enough, according to the evidence of experts, to have killed five or six men. Her motive in causing the death of the child was in order to get rid of it, she being unmarried, and she was also instigated to do so by her mother. Appellant, by several bills of exception, raises the question as to the admissibility of her confessions. The bills of exception all show that her confessions were made to the witness, Davidson, after she was duly warned by him. The fact that she may have been excited or in a perturbed state of mind before the officer, Davidson, warned her, would afford no ground for rejecting his testimony as to her confessions after he had warned her; and we do not understand that any of the testimony as to statements made by her before he warned her were admitted; at least, the bill does not show this. The fact that, before the defendant made confession of her crime to Martha Cotton, Dr. Smith had endeavored to get her to confess to him, and had told her that it would be better for her to confess, that she would be used only as a witness against her mother, would afford no ground for the rejection of her confession made on the next day to Martha Cotton. It was not shown that she was then under the influence of Dr. Smith. In fact, he was not present at the time. The defendant went to Martha Cotton, as it appears, of her own volition, and told her that she desired to make a statement to her as to what she did in reference to poisoning the child. Moreover, Dr. Smith was not an officer, and is not shown to have had any authority over the appellant. The court submitted to the jury the question whether or not the confession made to Davidson was voluntarily made, after having been warned by him, and also the question as to whether or not the confession made to Martha Cotton was free and voluntary on the part of appellant. Over the objection of the defendant, the State proved that the appellant confessed substantially that she had killed her child by poisoning it. Appellant was on the stand as a

witness. She makes the same statement, in substance, as was sworn to by the witness, Cowan. She conceded that she made that statement before the inquest, and does not in her testimony upon the trial deny its truth, or attempt to explain it. Conceding that the bill of exceptions is sufficient (which is very doubtful, and we do not pass upon this), and the testimony was inadmissible, if it was a fact that she had not been cautioned as stated in the objections to the admission of the evidence, yet it could have worked no injury to appellant, because she makes the same statements herself. The court submitted to the jury, as hereinbefore stated, that they would not consider said statement or confession unless the confessions made to Martha Cotton appeared to be voluntarily made, and would not consider same if they were made by reason of a promise on the part of any one to protect her from punishment, and that, by reason thereof, she confessed to poisoning her child. The confessions were admissible, and the court acted correctly in admitting them. This charge proceeds upon the assumption that the court may have erred in regard to this matter, and leaves it for the jury to say whether they were voluntarily made. This was favorable to the appellant, and no complaint could be urged against it. If it assumes that the confessions were made, it assumes that which is absolutely true and undisputed, and not questioned by any witness—admitted to be true by the appellant. It is not a charge upon the weight of the testimony. If it is, it is in favor of the accused. The charge of the court instructing the jury, in effect, that, if they believed the defendant poisoned her child on account of a request, demand, or persuasion of her mother, such request, demand, or persuasion would constitute no excuse for so doing, was objected to by the appellant. The evidence shows no such acts on the part of the mother of the appellant as would constitute coercion, and so relieve her from liability. The charge of the court in this respect was correct. The evidence amply supports the verdict, and the judgment is affirmed.

*Affirmed.*