### JOHN BARRETT v. THE STATE.

#### No. 4483. Decided June 13, 1917.

**1.—Murder—Evidence—Further Testimony.**

Where, upon trial of murder, defendant objected to testimony as to what defendant said about his name being "Gyp the Blood," but it appeared from

the record on appeal that the same character of testimony was admitted without objection, and that the defendant was indicted under an alias as "Blood," the same was not reversible error. Following Rogers v. State, 26 Texas Crim. App., 404, and other cases.

:2.—Argument of Counsel—Requested Charge—Harmless Error.

Where, upon trial of murder, the argument of State's counsel, while improper, was not of such a harmful character as to require a reversal, and the court sustained an objection thereto, and prosecuting attorney withdrew his remarks, there was no error in refusing a request of a special charge to disregard this argument.

3.—Same—Sufficiency of the Evidence.

Where, upon trial of murder, inflicting the death penalty, there was evidence of malice and flight on part of the defendant, and the jury was justified in returning their verdict, the same will not be disturbed on appeal. Following Black v. State, 46 Texas Crim. Rep., 590, and other cases.

4.—Same—Rehearing—Sufficiency of the Evidence.

Where, upon trial of murder, inflicting the death penalty, the verdict was sustained by the evidence under a proper charge of the court, there was no reversible error.

Appeal from the District Court of Matagorda. Tried below before the Hon. Sam'l J. Styles.

Appeal from a conviction of murder; penalty, death.

The opinion states the case.

*J. W. Conger,* for appellant.—On question of insufficiency of the evidence: Robinson v. State, 7 S. W. Rep., 531; Chambless v. State, 79 id., 577.

On question of admitting evidence as to name: Felsenthal v. State, 18 S. W Rep., 644; Thompson v. State, 38 Texas Crim. Rep., 339.

*E. B. Hendricks,* Assistant Attorney General, for the State.

MORROW, JUDGE.—Appellant was indicted and convicted of the murder of Louis Adams and the death penalty assessed against him.

That the deceased was killed by appellant is not contested. The State's evidence tends to show an assassination and express malice; that of the appellant, self-defense. The homicide took place at night at a dance in a restaurant kept by a negro woman by the name of Exine Matthews. Deceased and a woman called Ethel Anderson were living together. Appellant stepped on this woman's foot. She reported this to Adams, deceased, and a quarrel ensued. Appellant claimed to have apologized to the woman, and in this he was corroborated, though there was a conflict of evidence. There were a great many negroes at the dance, some of them in the house and many of them on the porch or gallery in front of it. During the quarrel appellant remarked: "You negroes are crazy to fool with me." Deceased replied: "You ain't no more to fool with than anybody else." Appel-

lant said: "I will show you," and stepped out of the house and disappeared. Deceased walked out on the porch, according to the testimony of the State's witnesses and, while standing there engaged in conversation with his hands in his pocket, appellant approached him unawares, coming within a very short distance, near enough to touch him with the pistol, as testified to by the State's witnesses, and fired several shots. Some of them hit the post by which deceased was standing, some the house, and one entered deceased's stomach, striking him in front but not going entirely through his body. Deceased, when shot, stepped off the gallery and followed appellant a few steps, appellant backing off and continuing to fire. After the homicide appellant fled and in passing a house where there was a light he ordered the door closed. He was arrested at Smithville some time after the homicide. Four witnesses testified that they were eyewitnesses to the shooting. Another testified to res gestae statements of the deceased that the appellant shot him. Appellant claimed to have met the woman Ethel Anderson in a rooming house upon her solicitation and to have been threatened by deceased on account of this meeting, there being evidence and threats both direct to appellant and communicated by others. There was evidence aside from that of appellant from which the jury would have been justified in concluding that the deceased had on his person a pistol at the time of the homicide and that he had gone to his house and gotten it after the quarrel began. There was no evidence except that of appellant of any effort on the part of deceased to use his pistol, nor of any indication that at the time he shot him, deceased knew of appellant's presence. Appellant claimed that when he left the premises deceased was standing on the gallery with a pistol in his hand; that he went to a toilet and returned and found deceased still standing on the gallery and had a conversation with him; that deceased pulled out his pistol and apparently tried to shoot and that on this account appellant fired.

The issues of murder and self-defense were submitted to the jury in a charge which was not complained of and which fairly submitted these issues to the jury.

There are two bills of exceptions, one to the evidence of Exine Matthews, as follows:

"While the witness Exine Matthews, for the State of Texas, was upon the stand, the prosecuting attorney asked the witness if she knew the defendant, John Barrett. Witness answered that she did, and then the prosecuting attorney asked the witness if she knew what the defendant said about his name being 'Gyp-the-Blood,' to which the defendant objected because the character of the defendant was not an issue in the cause, and such being the case the testimony would be prejudicial to the defendant, John Barrett, and further because it would be immaterial and irrelevant.

"But over the objection of the defendant, the witness was permitted to answer as follows: 'Defendant said that there was but three bad

men, Jesse James, Harry Tracy and "Gyp-the-Blood," and that he, defendant, was "Gyp-the-Blood." '

"To which testimony the defendant then and there in open court excepted and saved his bill of exception, and here now tenders his bill of exception thereto, and asks that the same be allowed and made a part of the record in this cause."

This bill hardly measures up to the rule laid down in Vernon s Ann. C. C. P., p. 537, requiring a sufficient statement to enable the court to determine from the bill the relation of the matter complained of to the case and its probable effect thereon. In view of the gravity of the case, however, it will be considered in connection with the record.

Appellant was described in the indictment as John Barrett, alias Blood. Exine Matthews on the subject mentioned in the bill of exceptions is shown by the statement of facts to have testified, in response to questions asked by the prosecuting attorney, as follows:

"I heard the shooting but didn't see it. I thought it was a firecracker. Yes, sir; I seen Blood inside my house just before the shooting occurred. Yes, sir; I heard him say something about who he was; he said he was Harry Tracy or something—Harry Tracy and Jesse— Q. Jesse James? A. Yes, sir; Jesse James, and Blood-the-something. Q. And Blood-the-Gyp or Gyp-the-Blood? A. Yes, sir; something like that. Q. What did he say about it; who was he? A. He said I am John, I am Jesse Something, and John-the-something; I can't get that thing fixed in my mind; I want to talk right. No, sir; I didn't hear Blood say that there are only three bad men—Jesse James, Harry Tracy and Gyp-the-Blood, and that he was Gyp-the-Blood. No, sir; I didn't."

Another witness, Shed Gaddison, testified that about a half hour before the homicide he heard a conversation between appellant and a girl at the dance, which he detailed as follows:

"He asked this girl to dance with him, and she told him she didn't want to dance, and he replied to her, he said: 'You are scared of Fish, the reason you don't want to dance with me, but this is—' I heard the three men's names he called but I cant think of but one he called; he called the other two names, and he said: 'This is Gyp-the-Blood; I am sufficient to protect you if you dance with me; I ain't scared of Fish if you is.' That is all he said on that line. Fish is that fellow Will Dennis, is all I know; he used to run a cleaning shop down there somewhere. Yes, sir; Blood said he was Gyp-the-Blood."

There is no bill of exceptions to this testimony of Gaddison.

We are unable to say that the testimony of the witness Matthews as disclosed by the record, it being apparent that the witness Gaddison testified to the same fact as that which the bill shows the witness Matthews to have related, was inadmissible; and the rule is well settled in this State that the admission of testimony is not cause for reversal if the same fact is proved by other testimony not objected to. Rogers v. State, 26 Texas Crim. App., 404; Walker v. State, 17 Texas

500 81 Texas Criminal Reports.

Crim. App., 16; Johnson v. State, 26 S. W. Rep., 504; Stephens v. State, 26 S. W. Rep., 728; Carlisle v. State, 37 Texas Crim. Rep., 108; Wagner v. State, 53 Texas Crim. Rep., 306.

Another bill complains that the county attorney in his closing argument used the following language: "I will ask the jury to look at the class of witnesses the defendant has placed on the stand—Willis Hawkins, brought from the jail where he had been placed for pistol toting to testify on his behalf."

The bill shows that the court sustained appellant's objection to this argument and that the prosecuting attorney withdrew and retracted the remarks. No request was made of the court to charge the jury to disregard this argument. The witness Willis Hawkins was shown by the statement of facts to have testified to details of the altercation which occurred in the house prior to the homicide. His testimony was cumulative in its nature of other testimony which showed that when appellant stepped on the negro woman's foot he begged her pardon and also of the fact that in the quarrel that ensued between the appellant and deceased both of them used rather bantering or braggadozio language. While not in the same language, the same fact in substance was testified to by several witnesses. This witness was not an eyewitness to the shooting but only to the conversation and transactions which preceded it. The argument was improper but not, we think, of such a harmful character as to require a reversal of the case, in view of the fact that the court sustained an objection to it and the prosecuting attorney promptly withdrew it. Branch's Ann. P. C., p. 204, sec. 362, and cases listed.

There is a well defined conflict in the evidence as to the occurrences at the immediate time of the shooting, and the evidence developed some discrepancies as to the location of the various witnesses and as to the number of people on the porch at the time of the shooting, but in the development of the State's case several witnesses were produced whose testimony justified the jury in finding that the deceased was making no demonstration against appellant and was not aware of his presence at the time he was shot. With this testimony in connection with the evidence of malice and that of flight on the part of appellant we would not feel authorized to disturb the verdict. Schwartz v. State, 47 Texas Crim. Rep., 213, 83 S. W. Rep., 195; Eddy v. State, 82 S. W. Rep., 513; Black v. State, 46 Texas Crim. Rep., 590; Branch's Ann. P. C., p. 1178, sec. 2096, and cases listed.

The judgment of the lower court is affirmed.

*Affirmed.*

## ON REHEARING.

### June 29, 1917.

MORROW, Judge.—The rehearing in this cause is sought upon the ground that the conflicting evidence as to the provocation, leading up to the homicide, does not warrant the extreme penalty. It can not

be denied that the case is one in which there is a sharp conflict in the evidence. It is one, however, in which the respective theories of the State and the defendant are supported by testimony of a definite and positive character.

After a careful review of the record, with full consciousness of the serious nature of the case, we have found no departure from the rules of procedure laid down by our law for bringing before the jury the facts, and advising them of the law to the end that they might perform the duty imposed upon them of solving the controversy. They had the privilege of measuring the punishment to be assessed. This court has no such authority. Though its members might feel that if they were sitting as jurors they would render a judgment less harsh, they could not upon this account alone set aside the verdict without doing violence to the duty, painful at times, to order an affirmance of judgments where the evidence is sufficient, the rules of law followed, and nothing to indicate that the jury was not impartial, nor that the trial was unfair.

The motion for rehearing is overruled.

*Overruled.*