**Benjamin Franklin RICHARDSON, Appellant,**

v.

**The STATE of Texas, Appellee.**

**No. 3–85–289–CR.**

Court of Appeals of Texas, Austin.

June 17, 1987.

Rehearing Denied Aug. 12, 1987.

Scott A. Young, Minton, Burton, Foster & Collins, Austin, for appellant.

Ronald Earle, Dist. Atty., Brenda Kennedy, Asst. Dist. Atty., Austin, for appellee.

Before POWERS, GAMMAGE and CARROLL, JJ.

POWERS, Justice.

The trial-court judgment convicts Benjamin Franklin Richardson of involuntary manslaughter, a lesser-included offense of murder for which he was indicted. Tex. Pen.Code Ann. §§ 19.02 and 19.05 (1974). The jury found that Richardson used a deadly weapon during the commission of the offense, and assessed punishment at ten years imprisonment and a $5,000 fine. Richardson was sentenced accordingly. Following the denial of his motion for new trial, Richardson appealed to this Court. We will affirm the judgment below.

The offense transpired when Richardson, at his daughter's house, quarreled with another man. Richardson drew a pistol and stumbled toward the victim. The pistol struck the victim in the head and discharged, killing him.

## THE JURY INSTRUCTION ON PAROLE

The jury were instructed, at the punishment stage of the trial, according to the provisions of Tex.Code Cr.P.Ann. art. 37.-07, § 4(a) (Supp.1987):

Sec. 4. (a) In the penalty phase of the trial of a felony case in which the punishment is to be assessed by the jury rather than the court, if the offense of which the jury has found the defendant guilty is listed in Section [3g(a)(1)], Article 42.-12, of this code or if the judgment contains an affirmative finding under Section [3g(a)(2)], Article 42.12, of this code, unless the defendant has been convicted of a capital felony the court shall charge the jury in writing as follows:

"Under the law applicable in this case, the defendant, if sentenced to a term of imprisonment, may earn time off the sentence imposed through the award of good conduct time. Prison authorities may award good conduct time to a prisoner who exhibits good behavior, diligence in carrying out prison work assignments, and attempts at rehabilitation. If a prisoner engages in misconduct, prison authorities may also take away all or part of any good conduct time earned by the prisoner.

"It is also possible that the length of time for which the defendant will be imprisoned might be reduced by the award of parole.

"Under the law applicable in this case, if the defendant is sentenced to a term of imprisonment, he will not become eligible for parole until the actual time served equals one-third of the sentence imposed

or 20 years, whichever is less, without consideration of any good conduct time he may earn. If the defendant is sentenced to a term of less than six years, he must serve at least two years before he is eligible for parole. Eligibility for parole does not guarantee that parole will be granted.

"It cannot accurately be predicted how the parole law and good conduct time might be applied to this defendant if he is sentenced to a term of imprisonment, because the application of these laws will depend on decisions made by prison and parole authorities.

"You may consider the existence of the parole law and good conduct time. However, you are not to consider the extent to which good conduct time may be awarded to or forfeited by this particular defendant. You are not to consider the manner in which the parole law may be applied to this particular defendant."

Richardson contends the statute is unconstitutional on two grounds. First, he argues that the statute directs the judicial department, through the jury, to interfere with the clemency powers specifically assigned the Governor and the Board of Pardons and Paroles in Tex. Const. Art. IV, § 11. Second, Richardson argues the statute is unconstitutional because the jury cannot understand the required instruction.

We first observe that a distinguished viewpoint holds that the kind of jury instruction mandated by art. 37.07, § 4(a) "is so fraught with peril, it is not worth the risk." *Monroe v. State,* 689 S.W.2d 450, 455, n. 4 (Tex.Cr.App.1985) (Clinton, J., dissenting). Nevertheless, the Legislature has assumed the risk and the issue reduces to whether Richardson has overcome the presumption that the legislative product is constitutional. Before turning to that question, we will set out what we believe were the intentions of the Legislature in their promulgation of art. 37.07, § 4(a).

We believe the purpose of the statute and the instruction it requires was to erect a barrier against any discussion by the jury of the parole law and good-conduct time, in order that these improper considerations might be precluded and punishment be assessed solely on proper considerations. The purpose is a valid one in every respect. The difficulty arises owing to the theory chosen to effectuate this valid purpose.

The Legislature evidently reasoned that parole law and good-conduct time often *became* topics of jury discussion simply because jurors were not correctly informed about such matters—their differing views and impressions, gleaned primarily from publicity, gave rise to doubts and queries that blossomed into full-scale discussions. Giving the jury accurate and authoritative information, in advance of their deliberations, might tend to diminish such discussions to the extent they were engendered in the first instance by incorrect information. Next, the giving of such correct information would mechanically eliminate at least one large category of reversible jury misconduct—those instances where the jury received and acted upon *misstatements* of the law pertaining to parole and good-conduct time, made by a persuasive but misinformed juror. Moreoever, the Legislature evidently believed that correctly informed jurors would be more inclined to obey the trial court's instruction not to consider parole and good-conduct time as they might affect the particular defendant before them, and to defend against and admonish any juror who might attempt to interject those considerations. Finally, by clearly setting out the working of the law pertaining to parole and good-conduct time—particularly the future contingencies upon which they depended—the jury would be given a practical reason for the abstract distinction drawn in the concluding instructions that they might consider the "existence" of the parole laws and good-conduct time, but they must not consider those factors as they might affect the "particular defendant" before them.

*Judicial Interference with Clemency Powers of the Governor and Board of Pardons and Paroles.* Article IV, § 11 of the Texas Constitution provides as follows:

The Legislature shall by law establish a Board of Pardons and Paroles and shall require it to keep record of its actions and the reasons for its actions. *The Legislature shall have authority to enact parole laws.*

In all criminal cases, except treason and impeachment, the Governor shall have power, *after conviction,* on the written signed recommendation and advice of the Board of Pardons and Paroles, or a majority thereof, to grant reprieves and *commutations of punishment* and pardons; and *under such rules as the Legislature may prescribe,* and upon the written recommendation and advice of a majority of the Board of Pardons and Paroles, he shall have the power to *remit fines* and forfeitures ... (emphasis added).

Like several other constitutional provisions, Art. IV, § 11 thus orchestrates in one provision the constitutional powers of several departments. Under this constitutional provision, the Governor and the Board of Pardons and Paroles are expressly directed to administer the "parole laws" and the "rules" laid down by another department—the Legislature—pertaining to clemency of the various kinds set out in Art. IV, § 11. By necessary implication, moreover, Art. IV, § 11 must be read as incorporating and protecting the powers expressly given the judicial department in Art. V, § 1. The power of clemency assigned to the Governor and the Board of Pardons and Paroles does not arise until "after conviction" in the judicial department; and, Art. IV, § 11 may not be construed as depriving the judicial department of its constitutional authority to determine the meaning of the Constitution itself and the Legislature's statutes, or the authority to judge whether the executive department has complied with them or whether the Legislature's statutes comply with Art. IV, § 11 of the Texas Constitution. *State ex rel. Smith v. Blackwell,* 500 S.W.2d 97 (Tex.Cr.App.1973); *Ex parte Gore,* 4 S.W.2d 38 (Tex.Cr.App.1928); *Ex parte Rice,* 72 Tex.Cr. 587, 162 S.W. 891 (1914).

■ We must, in any case, place beside Art. IV, § 11, and the powers therein assigned the Governor and Board of Pardons and Paroles, the basic and plenary power given the Legislature in Art. III, § 1: "The Legislative power of this State shall be vested in a Senate and House of Representatives, which together shall be styled 'The Legislature of the State of Texas.'" This includes an ultimate power in the Legislature to enact statutes that control, in various particulars, the *procedures* by which the judicial power is exercised. *See McNew v. State,* 608 S.W.2d 166 (Tex.Cr.App.1978); *Few v. Charter Oak Fire Ins. Co.,* 463 S.W.2d 424 (Tex.1971); *Government Service Ins. Underwriters v. Jones,* 368 S.W.2d 560 (Tex.1963); McDonald, *The Background of the Texas Procedural Rules,* 19 Tex.L.Rev. 229 (1941).

■ We need not attempt to harmonize the provisions of Art. IV, § 11 and Art. III, § 1 for the simple reason that the statute under attack does not create a conflict between them. Instead, art. 37.07, § 4(a) actually *precludes,* by its very terms, any conflict between the powers assigned the Legislature and those assigned the Governor and Board of Pardons and Paroles. The statute specifically *requires* that the jury be instructed that they may not consider how the parole laws and good-conduct time might affect the defendant in the case then before the jury. It is abundantly clear to us that this was intended to prevent the jury's anticipation and frustration of the parole power by assessing a longer sentence in order to lengthen the time before the defendant first becomes eligible to benefit from an exercise of that power. Under the express provisions of the art. 37.07, § 4(a), the parole power of the Governor and Board of Pardons and Paroles may be frustrated *only if the jury act affirmatively to disobey the instructions that the statute mandates.* In consequence, the statute cannot possibly be invalid on its face on the ground that it frustrates the exercise of a power assigned by the Texas Constitution to those officials.

May it not have that unconstitutional effect in its actual operation, notwithstanding its facial validity? Obviously, a jury *may* disregard the required instruction and act in a way that does frustrate the executive power given in Art. IV, § 11. But their doing so cannot logically be imputed in any way to the terms or force of the statute (unless, perhaps, it is unintelligible as Richardson contends). Such misconduct is always open to proof in a particular case and we may not assume that the jury will inevitably disobey the instruction they must be given. *Keady v. State*, 687 S.W.2d 757 (Tex.Cr. App.1985) (Clinton, J., dissenting); *Ainsworth v. State*, 517 S.W.2d 274 (Tex.Cr. App.1975).

We hold, in consequence, that the statute is not unconstitutional on the ground that it requires or operates to produce judicial interference with the clemency powers assigned by the Texas Constitution to the Governor and Board of Pardons and Paroles.

■ *Unintelligibility of the Required Instruction.* Richardson contends the mandated instructions are "unconstitutionally vague, inherently contradictory, and flatly unintelligible." He imputes these defects to the concluding instructions required by the statute: the jury *may* consider the existence of the parole law and good-conduct time *but* they *may not* consider how these may be applied to the particular defendant in the case before them. He argues that these are contradictory commands and "so convoluted and confusing" that a jury cannot follow them. Consequently, a defendant risks a denial of due process of law when a jury even attempts to assess punishment under these commands. We disagree.

The instructions would be unconstitutionally vague if persons of common intelligence must necessarily guess at their meaning. *Connally v. General Construction Co.*, 269 U.S. 385, 46 S.Ct. 126, 70 L.Ed. 322 (1926); *Cotton v. State*, 686 S.W.2d 140 (Tex.Cr.App.1985). We believe then that the proper standard by which to measure Richardson's contention is whether persons of ordinary intelligence may make the distinction required of them by the two commands. *Schwartz v. State*, 47 Tex.Cr. 213, 83 S.W. 195 (1904).

In our view, the distinction required by the two instructions is no more difficult or refined than that required of the jury in the trial court's familiar instruction relative to evidence of previous convictions and its effect upon the credibility, but not the guilt, of the defendant:

> In this case evidence has been introduced to the effect that the defendant has heretofore been convicted of another and different offense from that for which he is on trial. In this connection, you are charged that the court permitted this evidence to be introduced for the purpose of aiding you, if it does do so, in passing on the credibility of the defendant as a witness in his own behalf and the weight to be given his testimony; and you are charged that you cannot consider such evidence of such other conviction for any purpose other than that for which it was permitted to be introduced, to-wit, to aid you, if it does so, in passing on the credibility of the defendant as a witness in his own behalf and the weight to be given to his testimony herein.

State Bar of Texas, Texas Criminal Pattern Jury Charges, CPJC 0.02 (1975). We hold the jury instruction required by art. 37.07, § 4(a) is not constitutionally invalid on the ground that men of ordinary intelligence cannot make the distinction required by the mandated instruction.

Richardson also assigns two other errors in the trial court's charge under art. 37.07, § 4(a). The first relates to the problem discussed in *Tollett v. State*, 727 S.W.2d 714 (Tex.App., 1987), concerning erroneous statutory references found in art. 37.07, § 4(a). For the reasons there stated, we overrule Richardson's assignment of error. In another point of error, Richardson contends art. 37.07, § 4(a) was applied retroactively to his case. We have recently held the statute to be procedural and therefore

applicable to prosecutions pending on its effective date, which includes Richardson's. *Alvarado v. State*, 723 S.W.2d 318 (Tex. App.1987, pet. granted). We overrule on this ground Richardson's point of error.

## JURY MISCONDUCT

■ Richardson next contends jury misconduct occurred because the jury *did* consider the effect of the parole laws in assessing punishment in his case, denying him a fair and impartial trial, and thus the trial court erred in failing to grant his motion for new trial. Tex.Code Cr.P.Ann. art. 40.03(8) (1979).[1]

As already mentioned, one practical reason for instructing the jury as required by the statute is to prevent their speculation about future contingencies that are unknowable at the time of trial. In the context of the § 4(a) instruction, one factor *is* possible of accurate determination without the need for speculation—the period of time the defendant must serve in order to become *eligible* for parole. Where an accused is found guilty of an enumerated offense under art. 42.12, § 3g(a)(1), or as in this case, the judgment contains an affirmative finding under art. 42.12, § 3g(a)(2), the defendant becomes eligible for parole when the actual time he serves is one-third of the sentence imposed or twenty years, whichever is less, *without consideration of any good time earned.* If the defendant receives a sentence of less than six years, he must serve at least two. Thus, unlike crimes to which instructions under § 4(b) or (c) apply, eligibility for parole may be determined by simple calculation. There remain the imponderables centering around whether parole will actually be earned or granted; but *every* defendant to whom a § 4(a) charge applies becomes eligible for parole at a date that is susceptible of determination with absolute certainty. Therefore, the final paragraph of the charge, which actually informs the jury what they may and may not do, should be read with this in mind and the jury's conduct judged accordingly.

At the hearing on Richardson's motion for new trial, Juror Gaines testified as follows:

Q. Do you recall, generally, the court's instructions to you on the punishment phase of the trial regarding parole laws and how they affect an individual that is sentenced to the Texas Department of Corrections?

A. Yes.

Q. Were those things discussed by the members of the jury panel when you were trying to decide the range of punishment that should be assessed to Mr. Richardson?

A. Yes. It was discussed briefly.

   \*    \*    \*    \*    \*    \*

Q. How many votes [as to the number of years imprisonment] do you possibly think were taken?

A. There was one major vote, and then we were going around several times. Different people were changing their minds. So I would say there was probably, maybe, three different times we went around.

Q. Can you give me what the range of punishments the jurors were talking about?

A. Anywhere from five to 10 years.

   \*    \*    \*    \*    \*    \*

Q. When the terms five and six years were discussed, is that when the subject of parole came up?

A. Yes.

Q. Can you recall exactly what was said about the effect of parole on Mr. Richardson?

A. We were just discussing that he would be eligible for parole in a third of his term like the Judge had told us before we went in there. We were just considering, you know, we didn't know for sure if he would get out in that term or not. If he had been—you know—if we had made the sentence of

---

1. Now found at Tex.R.App.P. 30(b)(8) (Supp. 1987).

five years, we realized that he would have gotten out a lot earlier. So we, in turn, made it for a longer amount.

\* \* \* \* \* \*

Q. After the discussion of the effect of parole, did you change your vote to 10 years [from her earlier vote of "about seven"]?

A. Yes.

Q. Did you consider the effect the parole laws would have on Mr. Richardson in arriving at 10 years ...?

A. Yes.

Gaines was asked by defense counsel whether or not any other juror voted for an increase in punishment based upon the proposition that he might receive parole after serving one-third of whatever sentence was imposed. The prosecuting attorney objected and Gaines was not permitted to answer. There is no complaint on appeal directed at the exclusion of her answer. No bill was taken concerning what Gaines' answer would have been.

We should first observe that there is no evidence of a *misstatement of the law* concerning parole, although there is undisputed testimony that Gaines herself violated the trial court's instruction not to consider what effect the parole laws might have on Richardson. Thus, there can be no reversible error, in the present context, if we apply literally the test laid down in *Sneed v. State,* 670 S.W.2d 262, 266 (Tex. Cr.App.1984):

> To show that a jury's discussion of the parole law constitutes reversible error, it must be shown that there was
>
> "(1) *a misstatement of the law*
>
> "(2) *asserted as a fact*
>
> "(3) by one professing to know the law
>
> "(4) which is relied upon by other jurors
>
> "(5) who for that reason changed their vote to a harsher punishment.

(emphasis added). The tenor of the *Sneed* opinion, in this respect, indicates that the Court seemingly intended that this test should be the *only* test applicable in *all* cases where it is contended that the jury's discussion of parole entitled the defendant to a new trial, either on the ground that it amounted to the jury's receiving other evidence or the ground that the defendant was denied a fair and impartial trial, referring to Tex.Code Cr.P. art. 40.03(7), (8). 670 S.W.2d at 263–67. But this is not altogether clear to us. Is it not possible that the defendant is denied a fair and impartial trial if all the jurors (for example) anticipate parole, following the trial court's correct statement of the law of eligibility for parole, and vote for a harsher punishment in order simply to lengthen the period required for eligibility? Unquestionably, this would be unanimous jury misconduct detrimental to the defendant. *See* dissenting opinions, 670 S.W.2d at 267–70. We are not certain, then, that we should interpret *Sneed* as furnishing the exclusive test relative to jury misconduct and reversible error, in the present context, on motions for new trial under Tex.R.App.P. 30(b)(7) and (8) (Supp.1987). We need not, however, pursue that matter in the present appeal for Richardson's contention must be rejected on another ground established by *Sneed.*

The *Sneed* opinion is quite emphatic on yet another proposition—that the defendant has not shown that he was denied a fair and impartial trial when only one juror is willing to testify, after the trial, that he "voted a harsher penalty at the penalty stage of the trial because of the mention or discussion of parole." *Sneed v. State, supra,* at 266. The majority opinion is quite explicit in rejecting the contrary holding, found in one opinion filed in *Munroe v. State,* 637 S.W.2d 475 (Tex.Cr.App.1982). *See Sneed, supra,* 670 S.W.2d at 265–66. This additional rule in the *Sneed* opinion naturally raises the question of *how many* jurors need disobey the trial court's instruction, and vote for a harsher penalty, before the defendant has been denied a fair and impartial trial because the matter of parole arose in the jury's discussions. Is it possible to distinguish this aspect of *Sneed* on the ground that there is a difference

between a single juror's acting upon "the mention or discussion of parole" and his acting upon a specific intention to lengthen the period of eligibility required for the particular defendant in the case before the jury? We believe not, for it is implicit in *Sneed* itself that each of the three jurors who testified at the hearing on motion for new trial stated that they voted for a harsher punishment in anticipation of parole, and not because parole was merely mentioned or discussed. 670 S.W.2d at 263–64.

In any event, however, we believe the present point of error is controlled by the additional rule in *Sneed*, discussed above. Richardson's evidence shows only that Gaines herself disobeyed the trial court's instruction and voted for a harsher punishment in consequence of the fact that Richardson might be paroled on becoming eligible therefor at a date easily calculable under the trial court's correct statement of the law relating thereto. It *is* plain from *Sneed* that this minimum showing is insufficient to establish that Richardson was denied a fair and impartial trial. As a result, he has not shown that the trial court abused its discretion when it overruled his motion for new trial. We therefore overrule Richardson's point of error.

## USE OF EVIDENCE BEFORE THE JURY

■ In his fifth point of error, Richardson contends the trial court erred by denying him a copy of the grand-jury testimony of Dixie Richardson after that testimony had been used by the State before the jury.

At trial, the State attempted to impeach the testimony of Dixie Richardson by introducing into evidence a page from the transcript of her testimony before the grand jury. Counsel for Richardson timely objected; and, the trial court allowed him to inspect two pages of the grand jury testimony, but denied his request for the entire transcript. The court granted Richardson's motion to include the entire transcript

as part of the appellant's record, ordering that it be sealed to be opened by this Court on appeal.

The "use before the jury" rule entitles defendant to inspect, upon timely request, any document or statement used by the State before the jury in such a way that the contents of the document or statement become an issue. *Hoffpauir v. State*, 596 S.W.2d 139, 141 (Tex.Cr.App.1980). Where portions of the document are read aloud and the State informs the witness that the document is being referred to during the examination, there is a "use" by the State within the meaning of the rule. *Id.* Further, where the document is used for impeachment purposes, its contents have become an issue. *Id.* There is no question that the "use before the jury" rule applies in this case. The State introduced a page of Ms. Richardson's testimony, pointing out page and line numbers, and proceeded to impeach her previous testimony by having her read from her inconsistent grand-jury testimony.

However, after examining the transcript of the grand-jury testimony, we are unable to say that the trial court erred in allowing Richardson to inspect only the two pages. If the State uses portions of grand jury testimony, the defendant is entitled to inspect that testimony, but only to the extent that it covers the same subject involved in the portions used or introduced by the State. *Johnigan v. State*, 502 S.W.2d 136, 137 (Tex.Cr.App.1973). Otherwise, the traditional policy of grand-jury secrecy prevails and the testimony is exempt from disclosure. *See McManus v. State*, 591 S.W.2d 505 (Tex.Cr.App.1979). Our inspection reveals that the remaining pages of the transcript do not deal with the same subject. We overrule Richardson's point of error.

## MOTION IN LIMINE

■ Richardson's seventh point of error attacks the trial court's decision to overrule his motion in limine. In that motion, Richardson attempted to prevent the

State's questioning Richardson, during the punishment phase of the trial, concerning two previous convictions. Richardson did not take the stand, however, and he was precluded from giving testimony that might have persuaded the jury that he deserved probation. This situation preserved nothing for our review. The grant or denial of a motion in limine preserves nothing for appeal; objection must be made when the evidence is offered. *Romo v. State,* 577 S.W.2d 251, 252 (Tex.Cr.App.1979); *Harrington v. State,* 547 S.W.2d 616, 620 (Tex.Cr.App.1977). Because Richardson did not testify, the objectionable evidence was never offered; therefore, any possible harm from the trial court's ruling would be entirely speculative on our part. *Luce v. U.S.,* 469 U.S. 38, 105 S.Ct. 460, 83 L.Ed.2d 443 (1984).

We hold that to raise and preserve for appellate review a claim of improper impeachment through a previous conviction, the defendant must testify. *Luce, supra.* We overrule Richardson's point of error.

### LESSER–INCLUDED OFFENSE

■■ Finally, Richardson contends the trial court erred in refusing to charge the jury on the lesser-included offense of criminally negligent homicide. To require a charge on a lesser-included offense, a two-part test must be met. First, the elements of the lesser offense must be included in the proof necessary to establish the offense charged. *Thomas v. State,* 699 S.W.2d 845, 847 (Tex.Cr.App.1985). This part of the test is satisfied in the present case. *See* Tex.Code Cr.P.Ann. art. 37.09(1) and (3) (1981); Tex.Pen.Code Ann. §§ 19.02(a)(1) and 19.07(a) (1974). Second, there must be some evidence in the record that the defendant is guilty of the lesser offense *only,* if he is guilty at all. *Thomas, supra.* This evidence may come from any source, including the defendant's own testimony; the credibility of the evidence and whether it is conflicting may not be considered. *Id.* Richardson alleges there was evidence of criminal negligence in his case.

Richardson was convicted of involuntary manslaughter. The culpable mental state necessary for involuntary manslaughter is *recklessness.* Recklessness means the actor was *aware of the risk* surrounding his conduct or the results thereof, but *consciously disregarded that risk.* Tex.Pen. Code Ann. § 6.03(c) (1974); *Lewis v. State,* 529 S.W.2d 550 (Tex.Cr.App.1975). Criminal negligence on the other hand means the actor *should* have been aware of the risk surrounding his conduct, but *failed to perceive it.* Tex.Pen.Code § 6.03(d); *Lewis, supra.* These mental states cannot co-exist, of course, and we must determine whether there was any evidence that Richardson did not perceive the risk.

Richardson testified that when his wife was unable to get anyone to answer the door at Elizabeth's (Richardson's daughter's) home, he took a screwdriver from his truck in order to gain entry by removing a window. He also took a loaded pistol, cocked it, and put it in the waistband of his trousers. Richardson knew the gun was loaded and that the safety was not on. When Elizabeth finally answered the door, Richardson walked past her into the living room. On observing two glasses on the coffee table, he went into the bedroom where he opened a closet door and found the decedent, Dana DeWitty, hiding there. Richardson pulled his pistol out, holding it to his side, and "hollered, 'Come out of there. I want to talk to you.'" He then seized the decedent and pulled him out of the closet. Richardson, the decedent, and Elizabeth worked their way into the hall leading to the living room. Elizabeth came between her father and decedent. Richardson pushed his daughter away, raised the gun, and came down with the gun to hit decedent on the head with the gun butt. However, he tripped over his daughter or a laundry basket, and the gun struck the decedent's head and accidentally discharged, fatally wounding decedent.

Richardson testified that he had owned a gun for about 20 years; that he always carried it, while traveling, as a safety pre-

caution; and that he had previously used it to shoot rattlesnakes while "riding down pipelines."

Even if the jury had believed Richardson's testimony, one may not reasonably conclude that it constituted evidence showing Richardson was *unaware of the risk involved in his conduct.* Whether appellant's gun discharged accidentally is not dispositive. *Thomas, supra,* 699 S.W.2d at 849. Richardson knew the gun was loaded and the safety off. He had used the gun before and was aware of its potential for injury. The intervention of an unanticipated factor, such as tripping, cannot alter the fact that he was aware of the risk. *Id.* at 850.

> Rather, the risk is realized and actual harm results. Just because part of the conduct may be "involuntary" does not relieve a defendant from responsibility and culpability for the entire action.

*Id.* We overrule Richardson's point of error.

The judgment of the trial court is affirmed.