**Verlon D. TOLLETT, Appellant,**

v.

**The STATE of Texas, Appellee.**

**No. 3–86–010–CR.**

Court of Appeals of Texas,
Austin.

March 18, 1987.
Rehearing Denied April 15, 1987.

Terrence W. Kirk, Law Office of Joseph A. Turner, Randy T. Leavitt, Minton, Burton, Foster & Collins, P.C., Austin, for appellant.

Ken Anderson, Dist. Atty., Georgetown, for appellee.

Before SHANNON, C.J., and BRADY and CARROLL, JJ.

SHANNON, Chief Justice.

Appellant Verlon D. Tollett pleaded guilty before a jury to the offense of aggravated sexual assault. Tex.Pen.Code Ann. § 22.021 (Supp.1987). After hearing evidence, the jury assessed punishment at imprisonment for ninety-nine years.

Appellant attacks the judgment of conviction by eight points of error. In points one through four, appellant complains that the district court fundamentally erred by giving the instruction on the law of parole mandated by Tex.Code Cr.P.Ann. art. 37.-07, § 4(a) (Supp.1987).[1] By his fifth point

---

1. Article 37.07, § 4(a) reads:

In the penalty phase of the trial of a felony case in which the punishment is to be assessed by the jury rather than the court, if the offense of which the jury has found the defendant guilty is listed in Section 3f(a)(1), Article 42.12, of this code or if the judgment contains an affirmative finding under Section 3f(a)(2), Article 42.12, of this code, unless the defendant has been convicted of a capital felony the court shall charge the jury in writing as follows:

"Under the law applicable in this case, the defendant, if sentenced to a term of imprisonment, may earn time off the sentence imposed through the award of good conduct time. Prison authorities may award good conduct time to a prisoner who exhibits good behavior, diligence in carrying out prison work assignments, and attempts at rehabilitation. If a prisoner engages in misconduct, prison authorities may also take away all or part of any good conduct time earned by the prisoner.

"It is also possible that the length of time for which the defendant will be imprisoned might be reduced by the award of parole.

"Under the law applicable in this case, if the defendant is sentenced to a term of imprisonment, he will not become eligible for parole until the actual time served equals one-third of the sentence imposed or 20 years, whichever is less, without consideration of any good conduct time he may earn. If the defendant is sentenced to a term of less than six years, he must serve at least two years before he is eligible for parole. Eligibility for parole does not guarantee that parole will be granted.

"It cannot accurately be predicted how the parole law and good conduct time might be applied to this defendant if he is sentenced to a term of imprisonment, because the application of these laws will depend on decisions made by prison and parole authorities.

"You may consider the existence of the parole law and good conduct time. However, you are not to consider the extent to which good conduct time may be awarded to or forfeited by

of error, appellant urges that the district court erroneously overruled his motion for new trial. Appellant, by his last three points of error, asserts that the district court's refusal to admit certain expert testimony was erroneous. Finding no reversible error, this Court will affirm the judgment of conviction.

Because the evidence adduced at the hearing on appellant's motion for new trial is also relevant to our disposition of the first four points of error, we will first address point of error five. By this point, appellant contends that he should have been granted a new trial based on evidence that the jury improperly considered the manner in which the parole law would be applied to him, in violation of the last paragraph of the statutory parole instruction.

The victim of the sexual assault to which appellant pleaded guilty was his ten-year-old son. In addition, appellant sexually violated both his son and eight-year-old daughter over a period of many months. After two days of testimony, the jury returned its verdict assessing punishment at imprisonment for ninety-nine years after two hours of deliberation, thirty minutes of which was devoted to selecting a foreman.

Two jurors testified at the hearing on motion for new trial. Cynthia May testified that she and the other members of the jury applied the parole law in order to determine whether appellant's punishment should be assessed at imprisonment for life or at imprisonment for ninety-nine years. May testified that she voted for ninety-nine years on the (mistaken) belief that appellant would not become eligible for parole until he had served thirty-three years, whereas, had appellant been sentenced to imprisonment for life, he would have become eligible for parole only after twenty years.

The second juror to testify was Hank Taylor, the foreman. Taylor described the deliberations of the jury as follows:

> To get things started, I volunteered, I said, "Since I'm the foreman I will give

my recommendation, what I think is my personal opinion, and we will go around the table and everybody will get to give their personal opinion no matter how ridiculous it might be or what you want. You be open and honest and say what you feel."

And my initial take, and I said it because I did not want to throw things out of kilter, was 20 years. I did not want to say I'm for stringing the guy up or giving him life or whatever. I said 20 years.

The fellow that was sitting next to me said that he would go along with that. The next lady said that she was for a stiff sentence. She did not know how long. She would like to think about it. We went on to the next juror, and from there it went longer than 20 years. I think everything that was discussed was 60 years or longer.

We got around to about the sixth or seventh juror maybe, and the first words out of her mouth is if she could assess a death penalty she would.

I said, "That's a little bit hard in this case, I think," but she was telling her feelings. We went on around. It went from there to life. 99 years was mentioned.

We got around to about the eighth or ninth one at the table. It was another woman, and she was for some form of castration. That was not obviously in the paper. And from there everything was essentially 60 years, life, or—I'm trying to recall. I don't recall what everybody said. By the time it got back to me, I said I had no hang up with a life sentence or 99 years or a stiff sentence. The guy that was the second guy said he had no qualms with a life sentence or the stiffest possible sentence.

The lady that had refrained from saying anything said that she would go along with that. I left out one, and I don't recall which juror it was. It was the fourth or fifth one. The first time

this particular defendant. You are not to consider the manner in which the parole law may

be applied to this particular defendant."

around she said she thought the sentences were too harsh.

When we came back to her, she said, "Fine." On the second go around she said, "Fine." She said, "I will go along with a life sentence or 99 years." She said, "I was trying to play the devil's advocate trying to see—to get everybody to think about what they were doing, but," she said, "I will certainly go along with it. I have no qualms about it." And that's how the deliberations went. And from then on the question came up as to what life and the—the remark somewhere in this Charge. I believe, that life and/or 20 years, what that meant.

Taylor confirmed May's testimony that, in making its choice between imprisonment for life or for ninety-nine years, the jury attempted to calculate the effect this choice would have on appellant's parole eligibility date.

█ Appellant asserts that the district court should have granted the motion for new trial because the jury received other evidence after retiring to deliberate and because the jury engaged in misconduct that denied him a fair and impartial trial. Tex.Code Cr.P.Ann. art. 40.03(7)–(8) (1979), then in effect.[2]

The undisputed testimony at the new trial hearing establishes that the jury did not receive "other evidence" relative to the law of parole, other than in the district court's charge. Accordingly, the district court did not err in overruling the motion for new trial on this ground. *See Diaz v. State,* 660 S.W.2d 93 (Tex.Cr.App.1983); *Heredia v. State,* 528 S.W.2d 847, 852 (Tex.Cr.App. 1975).

█ The only arguable ground for a new trial in this appeal is that of jury misconduct under former art. 40.03(8). The testimony of May and Taylor may be sufficient

to establish that the jury engaged in misconduct by considering the application of the law of parole to appellant in violation of the instruction not to do so; however, under former art. 40.03(8) Tex.Code Cr.P. Ann., the defendant must demonstrate that the misconduct, if any, denied him a fair and impartial trial before a new trial will be granted. Appellant made no such showing.

In *Sneed v. State,* 670 S.W.2d 262, 266 (Tex.Cr.App.1984), the Court of Criminal Appeals held that a jury's discussion of the parole law denies the defendant a fair and impartial trial only if it is shown that there was a *misstatement* of the law, asserted as a fact by one professing to know the law, which was relied upon by other jurors, who for that reason, changed their vote to a harsher punishment. Obviously, the *Sneed* test is not met in this appeal because the law of parole is not misstated in the statutory parole instruction.

Appellant argues that the enactment of art. 37.07, § 4 effectively overruled *Sneed.* He urges this Court to readopt the test for reversible jury misconduct set out in *Heredia v. State, supra,* and *Munroe v. State,* 637 S.W.2d 475, 478 (Tex.Cr.App.1982). Under this test, jury consideration of the parole law denies the defendant a fair and impartial trial if at least one juror votes for a harsher punishment as a result. Even under this test, however, appellant has failed to show reversible error.

The evidence at the new trial hearing establishes that the jury gave minimal consideration, at best, to assessing appellant's punishment at a term of years less than ninety-nine. More important, the testimony also shows that the jury had unanimously agreed that punishment in this appeal should be set at either imprisonment for ninety-years or imprisonment for life before any discussion of the parole law took place and before any effort was made to

---

**2.** Before its repeal effective September 1, 1986, art. 40.03 provided:

New trials, in cases of felony, shall be granted the defendant for the following causes, and for no other:

.     .     .     .     .

(7) Where the jury, after having retired to deliberate upon a case, has received other evidence; ...

(8) Where, from the misconduct of the jury, the court is of the opinion that the defendant has not received a fair and impartial trial.

Substantially similar language is now found in Tex.R.App.P. 30(b)(7)—(8) (West 1986).

calculate the effect the choice of punishment might have on appellant's parole eligibility date, and that appellant's parole eligibility was considered only in choosing between the two "maximum" punishments. As a practical matter, imprisonment for ninety-nine years and imprisonment for life are equivalent sentences. To the extent that these terms of imprisonment differ, ninety-nine years, the term chosen by the jury, is the lesser. In short, there is no evidence that the jury's consideration of the law of parole caused any juror to agree to a *harsher* punishment. As a result, even under the standard of review appellant urges this Court to apply, he has not shown reversible error. Point of error five is overruled.

■ By point of error one, appellant contends that the district court fundamentally erred in giving the parole instruction mandated by art. 37.07, § 4(a) because the third paragraph thereof, which explains that the defendant will not become eligible for parole until the actual time served equals one-third of the sentence imposed or twenty years, infringes on the authority of the Board of Pardons and Paroles in violation of the constitutional separation of powers. Tex. Const.Ann. art. II, § 1 (1984). In point of error two, appellant contends the district court fundamentally erred in giving the parole instruction because the instruction is unconstitutionally vague. U.S. Const. amend. XIV; Tex. Const.Ann. art. I, § 19 (1984). Appellant's complaint is directed primarily to the last paragraph of the instruction, which informs the jury that it may consider the existence of the parole law, certain details of which have previously been explained in the instruction, but that it is not to consider the manner in which the parole law may be applied to the particular defendant. Appellant asserts that this portion of the instruction is self-contradictory and "utterly incomprehensible".[3]

■ Before addressing these points, it is useful to review the holding of the Court of Criminal Appeals in *Almanza v. State*, 686 S.W.2d 157, 160 (Tex.Cr.App.1985) (opinion on rehearing). In *Almanza*, the Court rejected the premise that any error in the jury charge requires automatic reversal in the absence of actual harm:

> We hold that finding error in the court's charge to the jury begins—not ends—the inquiry; the next step is to make an evidentiary review ... as well as a review of any other part of the record as a whole which may illuminate the *actual,* not just theoretical, harm to the accused.

686 S.W.2d at 174 (emphasis added). Elsewhere in its opinion, the Court in *Almanza,* after a thorough discussion of Tex.Code Cr.P.Ann. art. 36.19 (1981) and the opinions decided thereunder, sets forth the standard of review to be applied in cases of jury charge error:

> If the error in the charge was the subject of a timely objection in the trial court, then reversal is required if the error is "calculated to injure the rights of defendant," which means no more than that there must be *some* harm to the accused from the error. In other words, an error which has been properly preserved by objection will call for reversal as long as the error is not harmless.
>
> On the other hand, if no proper objection was made at trial and the accused must claim that the error was "fundamental," he will obtain a reversal only if the error is so egregious and created such harm that he "has not had a fair and impartial trial"—in short "egregious harm."
>
> In both situations the actual degree of harm must be assayed in light of the entire jury charge, the state of the evidence, including the contested issues and weight of probative evidence, the argument of counsel and any other relevant information revealed by the record of the trial as a whole.

686 S.W.2d at 171 (emphasis in original).

Assuming, without deciding, that appellant's constitutional complaints against art.

---

**3.** At trial, appellant objected to the district court submitting the parole instruction on the ground that it would deny him "the right to a fair trial." In his brief, appellant suggests that this very general objection was "arguably" specific enough to preserve the issue raised in this point of error. We disagree. However, as we will discuss *infra,* reversible error is not presented in any event.

37.07, § 4(a) have merit, the evidence adduced at the new trial hearing makes it clear that appellant suffered no actual harm as a result of the charge error. As previously noted, the jury had determined to give appellant the maximum punishment possible, either imprisonment for life or for ninety-nine years, before there was any discussion or consideration of the parole instruction. The only impact the presence of the parole instruction had on the jury's deliberations was in its determination to assess punishment at imprisonment for ninety-nine years rather than for the functionally equivalent term of life. This Court concludes that the evidence establishes beyond a reasonable doubt that the error, if any, in giving the parole instruction caused *no* actual harm to appellant, much less *egregious* harm. Points of error one and two are overruled.

■ In point of error three, appellant contends the trial court fundamentally erred in giving the parole instruction because, as applied to him, art. 37.07, § 4(a) operates as an *ex post facto* law. Tex. Const. Ann. art. I, § 16 (1984). Further discussion of this point of error is not required, because this Court has recently held that art. 37.07, § 4 is a procedural statute applicable to all prosecutions pending on its effective date. *Alvarado v. State*, 723 S.W.2d 318, Tex.App.—Austin, 1987. This point of error is overruled.

■ By point of error four, appellant urges that the district court fundamentally erred in giving the parole instruction because art. 37.07, § 4(a) was not applicable to this cause. Appellant bases this contention on the fact that the instruction mandated by § 4(a) is to be given only if the offense for which the defendant has been found guilty "is listed in Section 3f(a)(1), Article 42.12, of this code or if the judgment contains an affirmative finding under Section 3f(a)(2), Article 42.12, of this code." Appellant argues that because Tex.Code Cr.P.Ann. art. 42.12 (Supp.1987), does not contain a § 3f(a)(1) or a § 3f(a)(2), his case could not have come within the scope of art. 37.07, § 4(a).

The 69th Legislature, in addition to amending art. 37.07 to add § 4, also amended art. 42.12. *See* 1985 Tex.Sess.Law Serv., ch. 427, § 1, at 2896. As part of this amendment, former art. 42.12, § 3f was renumbered as art. 42.12, § 3g without substantive change. Obviously, the Legislature overlooked this renumbering when it cross-referred to art. 42.12 in art. 37.07, § 4(a).

Under the Code Construction Act, it must be presumed that the legislature, in enacting art. 37.07, § 4(a), intended a result feasible of execution. Tex.Gov't Code Ann. § 311.021 (Supp.1986). In construing the statute, this Court may consider the object sought to be obtained, the circumstances under which the statute was enacted, and the consequences of a particular construction. Tex.Gov't. Code Ann. § 311.023 (Supp.1986). In our opinion, it would be improper for this Court to construe art. 37.07, § 4(a) in such a way as to create a needless conflict with art. 42.12. We hold that the reference to art. 42.12, § 3f(a)(1) contained in art. 37.07, § 4(a) is an obvious reference to present art. 42.12, § 3g(a)(1). Because aggravated sexual assault is an offense enumerated in § 3g(a)(1), the trial court did not err by giving the parole instruction mandated by art. 37.07, § 4(a). The fourth point of error is overruled.

■ Appellant contends in points of error six, seven, and eight, that the district court erred in excluding testimony from three expert witnesses to the effect that it would promote the successful counseling and treatment of appellant's children for appellant to be placed on probation rather than imprisoned. The witnesses in question were Jan MacLean, a psychotherapist who was working with the Tollett children at the time of trial; Judy Cardenas, a social worker and psychotherapist who had counseled the Tollett family on two occasions; and Barbara Rasmussen, a social worker employed by the Department of Human Services who had investigated the mistreatment of the Tollett children for the department.

Texas Code Cr.P.Ann. art. 37.07, § 3(a) (Supp.1987) provides that at the punish-

ment stage of trial evidence may be offered "as to the prior criminal record of the defendant, his general reputation and his character." In addition, it has been held that "[e]vidence legally admissible to mitigate punishment or evidence that is relevant to the application for probation, if any, is also admissible." *Allaben v. State*, 418 S.W.2d 517, 519 (Tex.Cr.App.1967). *See also Williams v. State*, 481 S.W.2d 119, 124 (Tex.Cr.App.1972). Appellant, however, points to no authority for the proposition that the parties should be permitted to offer evidence regarding the effect a particular punishment might have on the *victim* of the crime, or that a particular punishment is required to promote the well-being of the *victim*.

Appellant relies chiefly on *Allaben v. State*, *supra*. In *Allaben*, the Court held that a defendant convicted of a sex crime should have been allowed to introduce evidence that he was undergoing psychiatric treatment on the ground that the evidence was relevant to his application for probation. There is nothing in *Allaben* to suggest that testimony as to the effect a grant of probation would have on the *victim* would be equally relevant.

We do not view *Day v. State*, 704 S.W.2d 438 (Tex.App.1986, no pet.) as supportive of this argument. In *Day*, the Court found no error in permitting a psychiatrist to testify that the defendant was a sociopathic personality for whom successful treatment was unlikely in order to *rebut* the defendant's testimony that he was capable of rehabilitation. Even if the *Day* opinion may be read as approving the use of expert witnesses to advise the jury as to the punishment appropriate in a particular case, the focus in *Day* was the rehabilitative potential of the *defendant*, not the victim.

Finally, the case law dealing with the use of psychiatric testimony at the punishment stage of capital trials, to which appellant refers in passing, is not on point. The punishment decision in a capital murder case is governed by evidentiary rules not applicable elsewhere. Tex.Code Cr.P.Ann. art. 37.071 (Supp.1987).

In its brief, the State refers us to *Schulz v. State*, 446 S.W.2d 872 (Tex.Cr.App.1969), in which the Court held that psychiatric testimony that the defendant would benefit from probation invaded the province of the jury. Although Texas courts no longer exclude opinion testimony on that basis, *Hopkins v. State*, 480 S.W.2d 212 (Tex.Cr. App.1972), it has been held that expert testimony as to the appropriate punishment should still be excluded in order to avoid a "battle of the experts" that would merely confuse the jurors. *Clemmons v. State*, 638 S.W.2d 657 (Tex.App.1982, no pet.). *See also* Tex.R.Cr.Evid. 403 (West 1986).

Regardless of the merits of appellant's legal argument, this Court notes that appellant was permitted to place evidence before the jury that it would be best for both him and his children if he were placed on probation. Dr. Robert Setty, a clinical psychologist, testified that appellant was undergoing treatment to overcome his deviant sexual urges and that his prognosis for successful treatment on an outpatient basis was good. Setty also testified that outpatient treatment, rather than imprisonment, "is the way to ensure that he's most likely not to recommit the offense." Setty expressed the opinion that imprisonment of appellant would be counterproductive. Testimony to the same effect was also elicited from Jan MacLean and from Tom Burditt, a social worker in a private practice specializing in the treatment of sex offenders.

With respect to the best interests of the Tollett children, Judy Cardenas testified during questioning by defense counsel:

Q As far as children who have been sexually abused are concerned and their treatment, is it important that the abuser also take part with the children in their treatment?

A Yes, it is in a variety of ways.

Q Please explain.

. . . . .

A Initially the most effective treatment for perpetrators is in a perpetrators' group. There's no way to rationalize and cop out in that kind of group. That has proven to be very effective.

Initially while the perpetrator is doing that, the most effective thing for spouses and children, in my experience, is to do their own therapy, to do play therapy if the children are young, to do a verbalizing talking kind of therapy if they're old enough to do that to deal with their own feelings of vulnerability and what has happened and anger.

During that phase, my experience is that if the perpetrator is around, not necessarily living—in fact, hopefully not living with them, but around for contact, this helps the children and the spouse get in touch with their own anger about what's happened, helps them get in touch with their sadness, their loss, their vulnerability.

Often or sometimes if the perpetrator is not available during that time, kids tend to romanticize, they tend to protect and defend the perpetrator rather than being able to be angry and deal with their other feelings.

After that stage of therapy, my experience is that family therapy is helpful for everybody to be able to deal with each other about what happened, and the perpetrator's presence is important during that stage, too.

.　　.　　.　　.　　.

Q  ... And I believe it was your testimony that it is of help to have the perpetrator working with the children. Is that correct?

A  Yes, it is.

This Court concludes that the testimony of Judy Cardenas, quoted above, was sufficient to convey to the jury her opinion, as an expert, that appellant's children would benefit if he were placed on probation. In light of this testimony, and the other expert testimony summarized above, the error, if any, in excluding similar testimony from Jan MacLean and Barbara Rasmussen was harmless.

The judgment of conviction is affirmed.