John Samuel AUSTIN, Appellant,

v.

The STATE of Texas, Appellee.

No. 09–86–180 CR.

Court of Appeals of Texas,
Beaumont.

March 30, 1988.

As Amended April 4, 1988.

Rehearing Denied May 4, 1988.

Jack B. Zimmermann and Albert M. Dworkin, Zimmermann & Lavine, Houston, for appellant.

Steve Greene, Asst. Dist. Atty., Liberty, for appellee.

## OPINION

BURGESS, Justice.

A jury convicted appellant of the murder of his brother and assessed his punishment at twenty years confinement in the Texas Department of Corrections. He brings forth three points of error. The first two both relate to *TEX.CODE CRIM.PROC. ANN. art. 37.07(4)* (Vernon Supp.1988) or the parole law jury instruction. The final point of error complains of improper jury argument.

In his first point of error, appellant alleges the trial court erred in denying a motion for new trial based upon jury misconduct. The second point alleges the trial court erred in not granting him a new trial based

upon the court's parole law jury instruction being unconstitutional. Appellant acknowledges that he did not object to the charge prior to its being given to the jury and thus he is entitled to a new trial only if there has been egregious harm. *Almanza v. State*, 686 S.W.2d 157 (Tex.Crim.App.1985) (opinion on rehearing). The issue of the constitutionality of the instruction has been decided in *Rose v. State*, No. 193–97 (Tex. Crim.App.—November 12, 1987) (not yet reported). A plurality of the court held an *Almanza* review to be proper whether an objection was lodged or not.

The trial court in its instruction, in pertinent part, stated:

> You may consider the existence of the parole law and good conduct time. However, you are not to consider the extent to which good conduct time may be awarded to or forfeited by this particular defendant. You are not to consider the manner in which the parole law may be applied to this particular defendant.

This instruction was in direct compliance with *sec. 37.07(4)*. Appellant's complaint in his motion for new trial was that the jurors disregarded this instruction and this was jury misconduct. The motion for new trial was accompanied by an affidavit from a juror and that affidavit was placed before the trial court at the hearing on the motion. The affidavit states:

> . . . .
>
> In August of 1986 I served as a juror in Case Number 16282, the State of Texas v. John S. Austin in the 253rd District Court of Liberty County, Texas.
>
> When the jury retired to deliberate at the punishment phase of Mr. Austin's trial, my initial vote was for a sentence of ten years. Most of the other jurors initially wanted to give him forty years. As we discussed what the appropriate sentence should be, we mentioned various periods of time, including fifteen and thirty years.
>
> As each proposed sentence was debated, we discussed the fact that Mr. Austin would be eligible for parole in one-third of the time that we sentenced him to and computed the number of years he would

> have to serve. We talked about Mr. Austin's age and how old he would be when he could get out. We also discussed the fact that when Mr. Austin would actually get out of prison would depend on how he conducted himself while in prison.
>
> The information we had about parole came from what the judge read to us in the courtroom. We did not have a written or typed set of instructions from the judge in the jury room. I personally took into consideration that Mr. Austin could be out of prison in about 6½ years when I agreed to sentence him to twenty years. If I had not considered parole as it applied to Mr. Austin, by thinking he could get out in less than twenty years, I would not have agreed to that sentence, but would have wanted to sentence him to a shorter term. I did not think that there was anything wrong with discussing parole or how it would be applied to Mr. Austin. At no time did any of the other jurors say that they thought it was improper. If the judge did not want us to talk about parole I do not think he would have told us about it.

The state did not object to the use of the juror's affidavit at the hearing on the motion for new trial, nor do they raise the issue before us. Therefore, we are not called upon to analyze its use under *TEX. R.CRIM.EVID. 606(b)*.

We are called upon, however, to examine the relationship of *Sneed v. State*, 670 S.W. 2d 262 (Tex.Crim.App.1984) (opinion on rehearing) to a discussion of parole under an instruction given in accordance with *art. 37.07(4)*. Several courts of appeal have decided that the rule set forth in *Sneed* should carry forward. *Shields v. State*, 730 S.W.2d 178 (Tex.App.—San Antonio 1987, no pet.); *Tollett v. State*, 727 S.W.2d 714 (Tex.App.—Austin 1987, pet. granted); *Benitez v. State*, 733 S.W.2d 395 (Tex.App. —Fort Worth 1987, no pet.); *Richardson v. State*, 733 S.W.2d 947 (Tex.App.—Austin 1987, pet. granted). We decline to accept the rationale of our brethren. We believe *Sneed*, by its very nature, is inapplicable to this case, for under the *Sneed* test, a jury's

discussion of the parole law constitutes reversible error if there was:

(1) a misstatement of the law

(2) asserted as a fact

(3) by one professing to know the law

(4) which is relied upon by other jurors

(5) who for that reason changed their vote to a harsher punishment.

*Sneed*, 670 S.W.2d at 266.

 Admittedly, Ms. Hoff's affidavit alleges no such violations as required by *Sneed*. She candidly admitted the jurors discussed how the parole laws would be applied to the defendant and how she personally considered the effect of the parole law on appellant. She went further to state she voted for a harsher punishment because of the parole law consideration. The state presented no controverting affidavits or testimony at the motion for new trial. They argue only that the trial judge had the discretion to disbelieve Ms. Hoff, especially in light of the fact she alleged they did not have a copy of the jury charge in the jury room. Where there is conflicting evidence, the trial court does not abuse its discretion in refusing to grant a new trial. *McCartney v. State*, 542 S.W.2d 156, 162–63 (Tex.Crim.App.1976). However, there is no conflicting evidence on the crucial issue of jury misconduct. The trial court erred in overruling the motion for new trial. Point of error number one is sustained.

The second point of error alleges the trial court committed reversible error in refusing to grant the new trial because of the inclusion of the parole law instruction in the charge. The instruction was not objected to; therefore, a reversal will be warranted only upon the showing of egregious harm. *Rose v. State*, No. 193–97 (Tex.Crim. App.—November 12, 1987) (concurring opinion). As previously noted under the first point of error, appellant obviously suffered harm because of juror Hoff's consideration. There are other factors to consider. Several members of the court of criminal appeals placed some weight on the fact that the prosecutor in *Rose* did not mention the parole instruction in jury argument. In this case, however, the prosecutor made the following remarks during argument:

Ladies and gentlemen, I submit to you that the only punishment to be considered here today is a stretch in the Texas Department of Corrections. And the law gives you some information on our parole laws. It provides that you will first be eligible for parole after the actual time that he has served equals one-third of the sentence you assess here today or twenty years, whichever is less. It also provides that the minimum of actual time that he would have to serve would be two years if the sentence was six years or less. This means, as I said, actual time served before he would be eligible for parole is one-third of the term of years you assess here today, or twenty years, whichever is less.

. . . .

Ladies and gentlemen, I believe if you go back and sit in the jury room and consider this, you will see that a long stretch in the penitentiary is a correct judgment in this case.

 The tenor of the state's argument certainly asks the jury to base its punishment upon the one-third rule. This type of consideration is improper as it would be applied to the particular defendant. There is, of course, an argument that no egregious harm has been shown because appellant only received twenty years in the Texas Department of Corrections and could have received 99 years or life. This assessment is entirely subjective and in view of the two objective instances, the juror's affidavit and the state's argument, the subjective analysis must fall. Consequently, we find that appellant suffered egregious harm by the use of the instruction. Point of error number two is sustained.

The final point of error relates to alleged improper jury argument during the guilt or innocence stage. The argument was not objected to and, arguably, it is permissible. In any event, it would not call for a reversal. This point of error is overruled.

Having found error at the punishment stage of the proceedings, the case is reversed and remanded for a new hearing on

the issue of punishment only. *TEX.CODE CRIM.PROC.ANN. art. 44.29* (Vernon Supp.1988).

REVERSED AND REMANDED.

BROOKSHIRE, Justice, dissenting.

Respectfully, this dissent is written, expressing my opinion.

Appellant, on January 29, 1986, was charged with the offense of murder. *TEX. PENAL CODE ANN. sec. 19.02* (Vernon 1974). The indictment charged that the Appellant did "intentionally and knowingly cause the death of an individual Roy C. Austin, by shooting him with a firearm." The Appellant and the deceased were brothers.

A plea of "Not guilty" was entered by the Appellant. The trial was to a jury from August 12 to August 13, 1986. His peers found the Appellant guilty of the offense of murder as charged in the indictment. Punishment was assessed at 20 years confinement.

The record reveals that John Austin shot and killed his brother, Roy Austin. Roy was known as "Tuffy". The killing took place on November 29th, 1985. The defense, at the trial on the merits, was self-defense. The Appellant swore that, immediately before the shooting, he and the decedent had an argument concerning certain property pawned at their store by one Bill Land. The argument centered around whether the property should be returned to Land. Appellant testified that he shot his brother to protect himself and Bill Land from imminent attack. Appellant also said he was in fear of his own life. Witnesses for the State contradicted this testimony.

At oral submission, Appellant argued and urged that there was only one point of error being argued and that occurred at the punishment stage. This point or error, or ground for review, maintained that reversible error was committed by the trial court in failing to grant the Appellant's Motion for New Trial. This new trial motion was based solely on jury misconduct. The jury misconduct was that the jurors disregarded the trial court's instructions and considered the application of parole and good conduct time laws to the Appellant.

The trial court, as mandated and directed by the Legislature, instructed the jury on the law of parole and good conduct time in compliance with *TEX.CODE CRIM.PROC. ANN. Art. 37.07, Sec. 4(a)* (Vernon Supp. 1987). *The trial court specifically and affirmatively charged, in part: "You are not to consider the manner in which the parole law may be applied to this particular defendant."*

A Motion for New Trial was based on one affidavit of Ms. Evelyn Hoff, a petit juror in the case. Her affidavit, in substance, set out that, when the jury retired to deliberate the punishment phase, Ms. Hoff's initial vote was for a sentence of 10 years. However, most of the other jurors initially voted to assess 40 years. There was a discussion as to what the appropriate sentence should be. Various periods of time were mentioned, including 15 and 30 years. The affidavit of Hoff set out that:

"[W]e discussed the fact that Mr. Austin would be eligible for parole in one-third of the time that we sentenced him to and computed the number of years he would have to serve. We talked about Mr. Austin's age and how old he would be when he could get out. We also discussed the fact that when Mr. Austin would actually get out of prison would depend on how he conducted himself while in prison."

Then, Ms. Evelyn Hoff, in the affidavit, related that she, personally, took into consideration (in her mental processes) that Mr. Austin could be out of prison in about 6½ years when she agreed to sentence him to 20 years. Further, in her affidavit, she swore:

"If I had not considered parole as it applied to Mr. Austin, *by thinking he could get out in less than twenty years,* I would not have agreed to that sentence, but would have wanted to sentence him to a shorter term." (Emphasis added)

In the latter part of the affidavit we find: *"I did not think* that there was anything wrong with discussing parole or how it would be applied to Mr. Austin...." (Emphasis added)

Appellant places major reliance on *TEX. CODE CRIM.PROC.ANN. 40.03* (Vernon 1979), setting out that:

> "New trials, in cases of felony, *shall be granted* the defendant for the following causes, and for no other:
>
> ....
>
> "(8) Where, from the misconduct of the jury, the court is of the opinion that *the defendant has not received a fair and impartial trial.* It shall be competent to prove such misconduct by the voluntary affidavit of a juror; and the verdict may, in like manner, be sustained by such affidavit...." (First emphasis theirs, second emphasis ours)

This subject matter has been brought forward in *TEX.R.APP.P. 30 and 31.* Notice *Rule 30* now mandates that the trial judge must actually find: (1) *the jury has engaged in such misconduct;* and (2) *that the accused has not received a fair and impartial trial.*

The Appellant tacitly concedes that jury misconduct does not always necessarily constitute the denial of a fair and impartial trial requiring that a Motion for New Trial be granted. The Appellant cites *Sneed v. State,* 670 S.W.2d 262 (Tex.Crim.App.1984), and recognizes that the court therein adopted a five-part test to determine if the jury's discussion of parole law resulted in reversible error. The *Sneed* test was: (1) a misstatement of the law; (2) asserted as a fact; (3) by one professing to know the law; (4) which is relied upon by the jurors; and (5) who, due to the misstatement, changed their vote to a harsher punishment. *Sneed v. State, supra,* at page 266. Then, the Appellant categorically argues that the *Sneed* five-part test is no longer applicable because, at a later time, *Art. 37.07, Sec. 4(a)* was adopted by the Legislature.

*TEX. CODE CRIM.PROC.ANN. Art. 40.-03* (Vernon 1979), then in effect, contains 9 subsections. The only one cited, or relied upon, by the Appellant is *Subsection (8).* I conclude that *Art. 40.03(8)* was the correct article in effect at the time of the trial, as the Appellant concedes. But the Appellant categorically states that *Art. 37.07, Sec.*

*4(a)* makes *Sneed* inapplicable. I think this position and argument are unsound. *Sneed v. State, supra,* was based on *Art. 40.03(8).* Indeed, *Art. 40.03(8)* has not been repealed by *Art. 37.07, Sec. 4(a),* nor have the holdings and rationale of *Sneed.* In fact, *Art. 40.03* has been brought forward and kept in force and effect, by *TEX. R.APP.P. 30(a)(b).* *Rule 30(b)* keeps in effect all 9 subdivisions of *Art. 40.03* and the slightly revised subdivision *(8)* of *Rule 30* reads:

> "(8) Where the court finds the jury has engaged in such misconduct that the accused has not received a fair and impartial trial...."

*Art. 40.03(8)* states:

> "(8) Where, from the misconduct of the jury, the *court is of the opinion* that the defendant has not received a fair and impartial trial...." (Emphasis added)

The rest of new subsection *(8)* merely sets out that it will be competent to prove such misconduct by the voluntary affidavit and the verdict may be sustained by such affidavit.

The Appellant had the burden, on the Motion for New Trial, to show jury misconduct to such an extent that the trial court found that the Appellant had not received a fair and impartial trial. The trial judge had a right to consider the entire record before him, of the trial on the merits, and the nature of the affidavit before him.

*Art. 37.07, Sec. 4(a)* does not repeal *Sneed v. State, supra,* nor can it repeal *Art. 40.03 Sec. (8).* In *Sneed,* I find this, at page 263:

> "We granted the State's petition for discretionary review to determine the correctness of the holding of the Court of Appeals that the jury discussion of the parole law *was so detrimental as to deprive him of a fair and impartial trial* in violation of Article 40.03, Sec. 8, V.A.C.C.P." (Emphasis added)

The manifest holding of the Court of Criminal Appeals, in *Sneed* was to the effect that, even though there were jury discussions of the parole law, the ultimate test which would require the granting of a motion for a new trial was whether such dis-

cussion of the parole law was *so detrimental as to deprive the accused of a fair and impartial trial.* Appellant has failed in this burden. In fact, he does not really frontally attack this proposition except to say that *Sneed* has been overruled by *Art. 37.076, Sec. 4(a).* I disagree. *Sneed* has not been overruled. Neither have *Art. 40.03, Sec. (8)* and *TEX.R.APP.P. 30(a) and (b)* been repealed by *Art. 37.07, Sec. 4(a).*

In *Sneed,* the court had, in its charge, directed the jury: "... you will not consider the amount of time a defendant will have to serve under any sentence you may assess...." *Sneed* proffered, on his amended motion for new trial, that 3 jurors testified as to the deliberations of the jury at the penalty stage. One juror stated that she had common knowledge that the inmates were released on parole and that, hence, this common knowledge caused her to vote for 7 years and then for 8 years, rather than the original 5–year term that she had voted for. The second juror said he voted, the first time, for 5 years imprisonment. Then, someone in the jury room " 'brought it up' that the time *probably would be cut in half.*" Then, that juror admitted that he could have raised the matter but *he didn't know the law and none of the other jurors knew it.* This second juror, O'Quin, "guessed it was common knowledge that inmates were released before the full time assessed, but no one knew the exact time." O'Quin later stated that the jurors had been instructed not to mention the Board of Pardons and Paroles, but after these discussions he probably raised his vote to vote for 10 years rather than the initial 5 years.

The third juror recalled that she first voted for probation. This juror, a female, then testified that "a bunch of people" raised the parole question 3 or 4 times during the deliberations. She stated these discussions consumed some 30 to 45 minutes. Someone stated, during the deliberations, in substance, that, out of a 10 year sentence "it would be four or five" served and that this was in the nature of speculation as no one professed to know the law and that the comment on parole was not new to her since she knew inmates were released on parole. She did state, however, that the comment caused her to change her mind and her vote. Even so, the high court did not reverse.

In *Sneed,* the court said a mention or discussion that inmates of the penitentiary are released on parole would be jury misconduct under said *Sec. 8,* but whether this conduct constitutes reversible error *would depend upon the facts of each case.* The court further wrote, at page 266:

"It is undisputed that the 'inconsistency of standards' have continued since *Heredia* [*v. State,* 528 S.W.2d 847 (Tex. Cr.App.1975)], and it makes little sense to say that, without more, *any* mention or discussion by jurors of the parole laws is always jury misconduct, although common knowledge, and will result in reversal if only one juror will later say he voted a harsher penalty at the penalty stage of the trial because of the mention or discussion of parole.

"After further consideration, we readopt the five-prong test gleaned from pre-*Heredia* cases.

"To show that a jury's discussion of the parole law constitutes reversible error, it must be shown that there was

" '(1) a misstatement of the law

" '(2) asserted as a fact

" '(3) by one professing to know the law

" '(4) which is relied upon by other jurors

" '(5) who for that reason changed their vote to a harsher punishment.' "

"Such test shall apply to cases under either Secs. 7 or 8 of Article 43.03, supra. All cases to the contrary are now overruled." (Emphasis theirs)

*Hoff's affidavit is not a misstatement of the law.* From the wording of the affidavit, I conclude that the same was really not asserted as a fact. *Hoff did not profess to know the law.* Her affidavit does not show that the other jurors relied upon her thoughts. It is remarkable that a great portion of Hoff's affidavit relates to her mental processes and thoughts, which

should have been inadmissible. Hoff, in her affidavit, stated:

> "I personally took into consideration that Mr. Austin could be out of prison in about 6½ years when I agreed to sentence him to twenty years."

Hoff's personally taking into consideration her own thoughts did not prove that the other jurors relied upon her private, mental processes. The jurors discussed several appropriate sentences. Various periods of time were mentioned. In fact, rather than relying upon the proposition that the entire jury assessed 20 years so that he would stay in prison for 6½ years, Evelyn Hoff pointed out that the jury discussed the fact that: "[W]hen Mr. Austin would actually get out of prison would depend on how he conducted himself while in prison." Nor is it proved that, because of Ms. Hoff's thoughts, the jury changed their votes to a harsher punishment.

Texas Rules of Criminal Evidence were adopted December 18, 1985, and became effective September 1, 1986.

The affidavit of Evelyn Hoff was dated and sworn to on September 10, 1986. The alleged jury misconduct was based solely on Hoff's affidavit. The motion for new trial containing the affidavit was filed on September 12, 1986. The hearing on the motion for new trial was October 9, 1986. *Rule 606(b)* of these rules was in effect on this last date.

After reading and analyzing Hoff's affidavit, I conclude that the purportedly operative parts of the same are disallowed by *Rule 606(b)*, as the same would have been before the effective date of *Rule 606(b)*.

Furthermore, the *Appellant concedes that there was no objection to the court's charge in the case subjudice concerning the instruction under Art. 37.07 Sec. 4(a)* and *concedes that the Appellant is only entitled to a new trial if it is shown that fundamental error existed and that this fundamental error,* under *Almanza v. State,* 686 S.W.2d 157 (Tex.Crim.App., 1985) (Opinion on rehearing) *caused egregious harm and actually denied to the Appellant a fair and impartial trial.* I would hold there was no egregious harm

and this Appellant was not denied a fair and impartial trial.

I would overrule the ground of error which maintained that the prosecutor committed error when he commented on the Appellant's nontestimonial courtroom demeanor and asked the jury to draw an inference from his nontestimonial demeanor demonstrating, or tending to demonstrate, that the Appellant was guilty of the offense charged. In this case, the Appellant testified in his own behalf. His defense was self-defense. The prosecutor made this argument at the guilt or innocence stage:

> "There is one thing that kind of bothered me throughout the defendant's testimony, and another thing I think points up—or should show you that he did murder his brother, that it wasn't any kind of accident, that it wasn't in self defense; he hasn't shown any remorse *throughout this trial.*" (Emphasis theirs)

There was no objection to this argument by trial counsel.

I think that it was evident that the prosecutor was talking about the Defendant's testimony. He so stated. I think this was proper jury argument in the case subjudice. *Alejandro v. State,* 493 S.W.2d 230 (Tex. Crim.App.1973). The four permissible areas of argument are: (1) *summation of the evidence, Ward v. State,* 474 S.W.2d 471 (Tex.Crim.App.1971); (2) *reasonable deduction from the evidence, Frazier v. State,* 480 S.W.2d 375 (Tex.Crim.App.1972); (3) *answer to argument of opposing counsel, Turner v. State,* 482 S.W.2d 277 (Tex. Crim.App.1972); *Miller v. State,* 479 S.W. 2d 670 (Tex.Crim.App.1972); and (4) *plea for law enforcement, Minafee v. State,* 482 S.W.2d 273 (Tex.Crim.App.1972); *Langham v. State,* 473 S.W.2d 515 (Tex.Crim. App.1971). I also think that the now-complained of prosecutor's argument—although not objected to at trial—was certainly in the nature of a summation of the evidence as well as a reasonable deduction or inference from that evidence. Hence, it was proper and permissible. It certainly was not reversible error.

Upon request, our court has received the opinions in *Vernon Lee Rose v. The State of Texas,* No. 19387, of the Court of Criminal Appeals, not yet published pending a motion for rehearing. The opinions of Judge Clinton, joined in by Judge Duncan in Part III; Judge Miller, joined by Judge Campbell; Presiding Judge Onion; Judge Teague; and Judge McCormick, joined in by Judges Davis and White, have been read. The opinions were delivered November 12, 1987. Pursuant to *Rose, supra,* I would find no egregious harm is shown in Appellant's case. Appellant, under this record, received a fair and impartial trial.

### *Evelyn Hoff's Affidavit and TEX.R.CRIM. EVID. 606(b)*

Evelyn Hoff's affidavit purports to show that, initially, "[m]ost of the other jurors" wanted to *assess a 40 year punishment.* Then, she swears that there was a discussion of an appropriate sentence, including 15 years and 30 years. The thrust of the affidavit glaringly and overwhelmingly shows the mental processes of the affiant, detailing her mental conclusions concerning when "Mr. Austin would actually get out of prison." The affidavit deals, in great part, with the mental processes of the affiant as well as the mental processes and thoughts of the other jurors as perceived by Hoff. The affidavit fails to comply with *TEX.R.CRIM.EVID. 606(b)* providing that a juror may not testify as to any matter or statement taking place during the course of the jury's deliberation. Further, the juror may not testify as to the effect of anything upon his, or any other juror's, minds or emotions as having had an influence upon the testifying juror's assent or dissent from the verdict. The affiant-juror may not testify as to his or her own mental processes. The Appellant has failed to demonstrate, by the single affidavit, any admissible ground or grounds for a new trial under *TEX.CODE CRIM.PROC.ANN. Art. 40.03* (Vernon 1979) or *TEX.R.APP.P. 30.*

From the brief order denying or overruling the Motion for New Trial, it is clear that the trial court refused to find that the jury had engaged in such conduct or misconduct which denied to the accused a fair and impartial trial. The District Judge, in effect, found that this accused did receive a fair and impartial trial.

A noted text writer and authority on evidence, Professor Roy R. Ray, in I R. RAY, TEXAS LAW OF EVIDENCE CIVIL AND CRIMINAL Sec. 395 (Texas Practice 3rd ed. Supp.1986), at page 104, takes the position that *TEX.R.CRIM.EVID. 606(b)* codifies the prior law and is consistent with former Vernon's Annotated Code of Criminal Procedure, Art. 40.03. Professor Ray's discussion further points out that a juror may not give his affidavit or testify " 'as to any matter or statement occuring during the course of the jury's deliberations or to the effect of anything upon his or any other juror's mind or emotions as influencing him to assent to or dissent from the verdict....' " Further, the discussion points out that, presumably, *TEX.R.CRIM. EVID. 606(b)* preserves the distinction between affidavits or testimony concerning "overt acts" and affidavits concerning the mental processes of a juror. The "overt acts" may be received but the mental processes of a juror may not.

In further analyzing the affidavit of Evelyn Hoff against the criteria set out by this very distinguished textbook writer, it is easily ascertainable that her affidavit dealt in major part, with her mental processes or what she perceived to be the mental processes of other jurors. Her affidavit contained such statements as:

"I personally took into consideration that Mr. Austin could be out of prison in about 6½ years...."

This was clearly a mental process of the affiant. Evelyn Hoff, after *going through this mental process of her own,* then "agreed" to the sentence of twenty years. Her agreement had to be preceded by her mental process and her mental conclusion. She further states:

"If I had not considered parole...."

This consideration was also a mental process of the affiant. Then she made this unequivocal statement:

"I did not think that there was anything wrong in discussing parole...."

Certainly, her thinking was definitely a part of Hoff's mental processes. Her last sentence is this:

"If the judge did not want us to talk about parole I do not think he would have told us about it."

Again, a recitation of mental processes. Evelyn Hoff did state what she thought was a fact—but she was clearly wrong in this—she swore, in her affidavit:

"We did not have a written or typed set of instructions from the judge in the jury room."

The record shows that there was a file mark on the court's charge at the punishment stage and the affiant was simply totally wrong. The trial court had a right to weigh this misstatement. The file mark shows 4:45 P.M., Aug. 13, 1986, by Joy McManus, District Clerk. The record shows the jury had the charge.

It has been shown, above, that an imminent authority on Texas criminal evidence has taken the position that *TEX.R.CRIM. EVID.* 606(b) codifies the prior law. Then, it should be remembered that *TEX.CODE CRIM.PROC.ANN.* art. 40.03(8) (Vernon 1979) provides, in relevant part and substance, that:

"(8) Where, from the misconduct of the jury, the court [that is, the trial court] is of the opinion that the defendant has not received a fair and impartial trial....",

a new trial is to be granted.

It is clearly implied and obvious, from this record, that the trial judge, after reviewing the gross inaccuracies and mistakes in Hoff's affidavit, as well as her many recitations of her own mental processes as well as that of the other jurors, found that the Appellant had received a fair and impartial trial.

It is important to note and it is compellingly persuasive that four opinions of courts of appeal have been delivered reasoning that the *Sneed v. State,* 670 S.W.2d 262 (Tex.Crim.App.1984) tests are still viable. *Shields v. State,* 730 S.W.2d 178 (Tex. App.—San Antonio 1987, no pet.); *Tollett*

*v. State,* 727 S.W.2d 714 (Tex.App.—Austin 1987, pet. granted); *Benitez v. State,* 733 S.W.2d 395 (Tex.App.—Fort Worth 1987, no pet.); *Richardson v. State,* 733 S.W.2d 947 (Tex.App.—Austin 1987, pet. granted). For my part, I would give weighty consideration to the reasoning and holdings of these three courts of appeal. Our court refuses to do so.

In weighing Hoff's affidavit, I would adhere to the rule announced by Judge Sam Houston Clinton, in *Vernon Lee Rose v. State, supra:*

"It is now the rule that jurors may not testify to any matter or statement occurring during the course of deliberations or to the effect of anything upon their minds or emotions influencing them or concerning their mental processes. Tex.R.Cr.Evid.Rule 606(b) ...."

Judge Clinton's ruling is the latest pronouncement by the high court; it should govern our court on this question.

### The Trial Judge's Prerogative

Furthermore, the majority incorrectly and erroneously holds that the trier of fact cannot discredit or disbelieve the entirety of a witness' affidavit. *Thomas v. State,* 605 S.W.2d 290 (Tex.Crim.App.1980); *Ables v. State,* 519 S.W.2d 464 (Tex.Crim.App. 1975).

The Court of Criminal Appeals, reaffirming the traditional, historical rule in *Ruben v. State,* 645 S.W.2d 794 (Tex.Crim.App. 1983), wrote that it is not permissible for a juror to impeach his own verdict either by showing his own, or another juror's mental processes. *See Daniels v. State,* 600 S.W. 2d 813 (Tex.Crim.App.1980).

Indeed, the strong and viable prohibition against demonstrating or reviewing the mental processes of jurors was clearly announced in *Hill v. State,* 493 S.W.2d 847 (Tex.Crim.App.1973). In *Hill,* a juror's affidavit set out that she had doubts about the defendant's guilt and she thought the other jurors had actually misunderstood the law. This affidavit, of course, went to the very heart of the matter of the actual guilt of the defendant. No issue could be

more crucial. Nevertheless, the Court of Criminal Appeals rejected this affidavit because it reflected the mental processes of the affiant.

And the rule against showing the mental processes of jurors extends to even demonstrating the reasons for the conclusions reached by the juror. This is certainly the case at bar before us. *See Berry v. State,* 588 S.W.2d 932 (Tex.Crim.App.1979). In *Berry,* the defendant's motion for new trial contained affidavits setting out that a juror had actually considered a confession despite the trial court's limited instruction, but the Court of Criminal Appeals found that even such a serious claim did not merit a new trial. *See Peak v. State,* 522 S.W.2d 907 (Tex.Crim.App.1975).

### The Policy and Rationale Prohibiting Mental Processes

I submit sound reasoning undergirds *Rule 606.* There exists such basic considerations as avoiding the harassment of trial jurors, avoiding any inhibitions of *valid deliberations inside the jury deliberation room,* and avoiding a deluge of post-verdict applications or motions for new trial. Also, *Rule 606,* is sound and is an effort to make a jury's verdict more certain and reasonably final, as well as discouraging any type of jury tampering. *See United States v. Davila,* 704 F.2d 749 (5th Cir.1983); *King v. United States,* 576 F.2d 432 (2nd Cir. 1978).

### The Federal Rule of Evidence 606

Federal Rule of Evidence 606, after which our State rule is patterned, embodies and puts into effect the distinction in the federal trial courts which precluded inquiry into subjective deliberation processes or the mental processes of the jury. *See United States v. D'Angelo,* 598 F.2d 1002 (5th Cir. 1979). But, of course, a juror would be allowed to give testimony concerning incidents that actually constituted external, extraneous or outside influences coming into the jury deliberation room, such as outside-of-the-record evidence reaching the jury room and communications or contact between the jurors and the actual litigants or other improper third parties. *See United States v. Duzac,* 622 F.2d 911 (5th Cir. 1980). These federal cases are highly persuasive in interpreting our *Rule 606(b).*

I would vote to affirm the judgment and sentence below based, inter alia, on the following rationale:

1. *Sneed, supra,* and the tests contained therein still apply, being a viable precedent;

2. *TEX.CODE CRIM.PROC.ANN Art. 37.07(4)* (Vernon 1988) does not repeal *TEX.CODE CRIM.PROC.ANN. Art. 40.03* (Vernon 1979).

3. *TEX.R.CRIM.EVID. 606(b)* is a reenactment and codification of *TEX.CODE CRIM.PROC.ANN. Art. 40.03* (Vernon 1979).

4. That the trial judge had a right, in the exercise of his judicial discretion, to not believe Hoff's affidavit;

5. That the trial judge had a right and a responsibility to disregard the mental processes of Hoff as well as her mental conclusions;

6. The trial judge also had a right to disregard Hoff's mental processes and mental conclusions as to the other jurors' mental processes and mental conclusions;

7. The trial judge impliedly and obviously found that Appellant had suffered no egregious harm;

8. That the trial judge impliedly and obviously found that the Appellant had received a fair and impartial trial.